# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA WELTY, *on behalf of herself and all persons similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | Case No. 1:25-cv-00696-KES-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION FOR TRANSFER<br><br>(ECF No. 6)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is Defendant Valve Corporation's motion to transfer. (ECF No. 6.) The parties stipulated to submitting the motion on the briefs, which the Court granted. (ECF No. 9.) Having considered the moving papers, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendant's motion to transfer, pursuant to 28 U.S.C. § 1404(a).

## I.

## BACKGROUND

This is a putative class action arising out of Defendant's alleged refusal and willful failure to timely pay arbitration fees relating to alleged consumer antitrust violations. (ECF No. 1-1, ¶ 1.) Plaintiff is Pamela Welty, a California resident who gave notice to Defendant of her consumer antitrust arbitration claim, filed her claim and paid the arbitration fee. (Id. at ¶ 16.) Defendant is

1  Valve Corporation, a Washington State corporation with its principal place of business in
2  Bellevue, Washington. (Id. at ¶ 15.) Plaintiff alleges that Defendant is a video game developer-
3  turned-merchant that operates Steam, an online digital gaming platform. (Id. at ¶ 15.) Steam
4  "overwhelmingly dominates the online PC video game sales market throughout the United States."
5  (Id. at ¶ 15.)

6  On October 25, 2025, the Western District of Washington, in a separate consumer class
7  action, granted a motion by Defendant to compel arbitration arising from Defendant's alleged
8  unlawful enforcement of a Platform Most-Favored-Nation provision, in violation of the Sherman
9  Antitrust Act; the court also stayed the case. (Id. at ¶ 2, citing In re Valve Antitrust Litig., No.
10 2:21-cv-00563-JCC, ECF No. 66 (W.D. Wash. Oct. 25, 2021).) As relevant here, thousands of
11 affected Valve consumers, including Plaintiff, retained Mason LLP to pursue their individual
12 antitrust claims against Defendant before the American Arbitration Association ("AAA"). (Id. at
13 ¶¶ 3, 4.) In December 2023, Plaintiff and other claimants filed their individual claims with AAA.
14 (Id. at ¶ 5.) On February 2, 2024, AAA notified counsel for the claimants that they were
15 responsible for their portion of AAA filing fees, amounting in total to $1,143,325.00, which the
16 claimants paid. (Id. at ¶ 6.) On February 22, 2024, AAA determined that Plaintiff and the
17 claimants met the AAA's administrative filing requirements. (Id. at ¶ 7.) AAA then notified
18 Defendant that it was responsible for a payment of initial filing fees, amounting to $1,866,100.00,
19 which Defendant paid. (Id. at ¶ 8.) Thereafter, AAA notified Plaintiff and the claimants that they
20 were responsible for an administrative fee in the amount of $1,143,325.00, which the claimants
21 paid. (Id. at ¶ 9.) On March 4, 2025, AAA sent Defendant an invoice of $20,875,400, due upon
22 receipt, for additional case management fees; $2,378,600.000 of this fee is attributed to the
23 California putative class members in the instant lawsuit. (Id. at ¶ 10.) Defendant has refused to
24 pay the March 24, 2025 AAA invoice, which Plaintiff alleges has thwarted the arbitration from
25 proceeding. (Id. at ¶¶ 11, 12.)

26 On May 2, 2025, Plaintiff filed a putative class action complaint in California Superior
27 Court, Tuolumne County, bringing only one cause of action: violation of the California Arbitration
28 Act, Cal. Code Civ. Proc. §§ 1281.87 *et seq.* (ECF No. 1, ¶ 2; ECF No. 1-1, ¶¶ 60-68.) One June

6, 2025, Defendant removed the action to Eastern District of California. (ECF No. 1.) On July 18, 2025, Defendant moved to transfer this matter to the Western District of Washington. (ECF No. 6.) The assigned District Judge referred the motion to the undersigned for the preparation of findings and recommendations. (ECF No. 14.) The motion has been fully briefed (ECF Nos. 7, 11), and the Court took the matter under submission without a hearing. (ECF No. 9.) The Court now issues its findings and recommendations without a hearing. See Local Rule 230(g).

## II.

## RELATED MOTION IN RELATED ACTION

As mentioned above, on April 27, 2021, a putative class action complaint was filed in the Western District of Washington against Defendant, alleging violations of the Sherman Act and the Washington State Consumer Protection Act. In re Valve Antitrust Litigation, No. 2:21-cv-00563-JNW, ECF No. 1 (W.D. Wash.) Relevant here, on June 11, 2025, plaintiff Ryan Lally, a California resident (who would also be a part of the putative class in the instant action), filed a motion for sanctions. Id. at ECF No. 467. Lally is represented Mason LLP, who also represents Plaintiff in this action. See id. In his motion, Lally describes the same background regarding the status of arbitration as in this case but also for the nationwide class. Lally argues that Defendant was required to pay AAA's fees pursuant to the Steam Subscriber Agreement. See id. Moreover, Lally argues he experienced prejudice from Defendant's delay in payment and that Defendant has demonstrated a pattern of bad faith. See id. Thus, Lally argues that the court should compel Defendant to pay the invoiced fees. At the time of the issuance of this order, the motion for sanctions remains pending.

## III.

## LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Ventress v. Japan Airlines, 486 F.3d 1111, 1118 (9th Cir. 2007), quoting 28 U.S.C. § 1404(a). The purpose of 28 U.S.C. § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'

3

Van Dusen v. Barrack, 376 U.S. 612, 616 (1964), quoting Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26-27 (1960).

The initial inquiry under 28 U.S.C. § 1404(a) is whether the case could have been brought in the forum to which transfer is sought. 28 U.S.C. § 1404(a); Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985). If venue is appropriate in the proposed transferee court, the statute provides "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988), quoting Van Dusen, 376 U.S. at 622.

In the Ninth Circuit, the non-exclusive factors a district court may consider in determining whether a transfer is warranted for the convenience of the parties and witnesses and in the interest of justice are: (1) the plaintiff's choice of forum, (2) the respective parties' contacts with the forum, (3) contacts relating to the plaintiff's cause of action in the chosen forum, (4) differences in the costs of litigation in the two forums, (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (6) ease of access to sources of proof, (7) the location where relevant agreements, if any, were negotiated and executed, and (8) the state that is most familiar with the governing law. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Courts also consider the feasibility of consolidation with a pending related action in the forum to which transfer has been proposed. A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal., 503 F.2d 384, 389 (9th Cir. 1974); *see* Hawkins v. Gerber Prods. Co., 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (discussing that transfer was supported where five similar cases against defendants were already consolidated and pending in another district). "Weighing of the factors for and against transfer involves subtle considerations . . . ." Ventress, 486 F.3d at 1118, quoting Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). The party seeking a change of venue has the burden of demonstrating transfer is appropriate. Commodity Futures Trading Comm'n, 611 F.2d at 279.

However, the standard takes a bit of a shift when there is a forum-selection clause involved. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." Atl. Marine Const. Co. v. U.S. Dist. Court for W.

1  Dist. of Tex., 571 U.S. 49, 60 (2013).  This is so because Section 1404(a) merely codified the
2  doctrine of forum non conveniens "for the subset of cases in which the transferee forum is within
3  the federal court system." Id.
4       As a first principle, "[w]hen the parties have agreed to a valid forum-selection clause, a
5  district court should ordinarily transfer the case to the forum specified in that clause." Id. at 62.
6  Unlike the situation where there is no forum-selection clause, a plaintiff "must bear the burden of
7  showing why the court should not transfer the case to the forum to which the parties agreed." Id.
8  at 64.  Thus, the Ninth Circuit has observed that "[t]he plaintiff's subsequent choice of forum
9  merits no weight." Yei A. Sun v. Advanced China Healthcare, Inc., 901 F.3d 1081, 1087 (9th Cir.
10 2018), citing Atl. Marine, 571 U.S. at 63-64.
11      Secondly, "a court must deem all factors relating to the private interests of the parties (such
12 as the 'relative ease of access to sources of proof; availability of compulsory process for
13 attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of
14 view of premises, if view would be appropriate to the action; and all other practical problems that
15 make trial of a case easy, expeditious and inexpensive') as weighing 'entirely in favor of the
16 preselected forum.'" Id. at 1087-88, quoting Atl. Marine, 571 U.S. at 64, 62 n.6.  "While a court
17 may consider factors relating to the public interest (such as 'the administrative difficulties flowing
18 from court congestion; the local interest in having localized controversies decided at home; [and]
19 the interest in having the trial of a diversity case in a forum that is at home with the law,' those
20 factors will rarely defeat a transfer motion." Id. at 1088 (internal quotations omitted).
21      The practical result is that a forum-selection clause "should control except in unusual
22 cases."  Atl. Marine, 571 U.S. at 64.  This is so because "enforcement of valid forum-selection
23 clauses, bargained for by the parties, protects their legitimate expectations and furthers vital
24 interests of the justice system." Id. at 63, quoting Stewart Organization, Inc. v. Ricoh Corp., 487
25 U.S. 22, 33 (1988) (Kennedy, J., concurring).  In short, "[o]nly under extraordinary circumstances
26 unrelated to the convenience of the parties" should a motion to enforce a forum-selection clause be
27 denied. Id. at 62.
28      Giving meaning to the term "extraordinary circumstances," the Ninth Circuit has

5

recognized that a forum-selection clause may not be controlling where a plaintiff makes a strong showing that: "(1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" Yei A. Sun, 901 F.3d at 1088, quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).

## IV.

## DISCUSSION

Defendant begins by arguing that either relevant user agreement between the parties contains a forum selection clause that dictates that this matter be transferred to the Western District of Washington. (ECF No. 6, pp. 11-12.) Defendant then elaborates, arguing that the forum selection clause is valid and enforceable. (Id. at pp. 12-14.) Finally, Defendant contends that no exceptional circumstances exist that would allow the Court to disregard the forum selection clause. (Id. at p. 14.) Plaintiff opposes, arguing that the forum selection clause is unenforceable and then veering into that she was coerced into accepting the current user agreement. (Id. at pp. 4-7.) And even if the forum selection clause were enforceable, Plaintiff argues that it would not mandate transfer here. (Id. at p. 8.) In reply, Defendant reiterates that the Court need not address which agreement covers the parties' relationship because both agreements contain a forum selection clause that governs this dispute. (ECF No. 11, pp. 3-6.) The Court agrees with Defendant in all respects.

A. The User Agreements

Given the arguments by the parties, the Court will outline the two user agreements at issue. Before September 26, 2024, Defendant included the following forum selection clause in its previous user agreement ("previous agreement"), requiring any legal proceeding in court go forward in King County, Washington State, which is where Defendant is headquartered:

> . . . Subject to Section 11 (Dispute Resolution/Binding Arbitration/Class Action Waiver) below, you and Valve agree that any claim asserted in any legal proceeding shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction. You

>and Valve hereby consent to the exclusive jurisdiction of such courts. In any dispute arising out of or relating to this Agreement, your use of Steam, your account, or the Content and Services, the prevailing party will be entitled to attorneys' fees and expenses (exception arbitration – see Section 11.C.)

(ECF No. 6-1, p. 36.)

Following the arbitration of four claimants unrelated to this case, it was found that the arbitration clause in this previous agreement was unconscionable and unenforceable. (Id. at pp. 114-58.) Therefore, on September 26, 2024, Defendant removed the arbitration provision and class action wavier from its user agreement (the "current agreement"). The current agreement now provides for resolution of disputes in court:

> . . . You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction. You and Valve hereby consent to the exclusive jurisdiction of such courts and waive any objections as to personal jurisdiction or venue in such courts.

(Id. at p. 11.)

Plaintiff neither admits nor denies Defendant's proffer that Plaintiff affirmatively agreed to the current Agreement on September 27, 2024, by checking a box next to "I Agree to the Updated Steam Subscriber Agreement" and then clicking "Accept Updated [Agreement]" on a pop-up notice. (ECF No. 6, p. 9; ECF No. 7, p. 7.) Defendant also notes that Plaintiff made several purchases on Steam since Defendant launched its current Agreement, which according to Defendant required re-affirming consent to the Agreement. (ECF No. 6, p. 9.)

B.  Enforceability of Forum-Selection Clause

Preliminarily, the parties do not dispute that this case could have been brought in the forum to which transfer is sought, namely the Western District of Washington. The Court agrees. Thus, the principal disputes here are whether the forum-selection clause is enforceable and whether it mandates transfer. For enforceability, Plaintiff argues only that enforcement of the forum selection clause would contravene a strong public policy of California. The Court is not persuaded.

Given the strong federal policy in favor of enforcing forum-selection clauses, a plaintiff

must show more than the forum state's mere interest in adjudicating certain claims. See Yei A. Sun, 901 F.3d at 1089-90. Rather, a "plaintiff must point to a statute or judicial decision that clearly states such a strong public policy" so as to render a forum-selection clause unenforceable. Id. at 1090, citing Am. Online, Inc. v. Superior Court, 90 Cal. App. 4th 1 (2001) (expressly holding that "[e]nforcement of a forum selection clause . . . would itself violate important California public policy.").

Plaintiff has identified the California Arbitration Act ("CAA") as creating a strong policy for not enforcing the forum-selection clause. Plaintiff argues that the CAA has no statutory equivalent in Washington State and that part of reasoning underpinning the CAA was to eliminate the "procedural limbo and delay" that arises when a company, having compelled arbitration, refuses to pay arbitration fees. Plaintiff asserts that the CAA statutory rights are "nonwaivable public policy and cannot be limited by private contract language." (ECF No. 7, p. 5.) Plaintiff continues, arguing that the enforcement of the forum-selection clause would deprive Plaintiff of the remedies afforded by the CAA because transfer would "necessarily be followed by the application of Washington law . . ." (Id.)

To support that the CAA "clearly states a strong public policy," Plaintiff, in a footnote, has identified legislative history associated with Senate Bill 707. However, as Defendant notes in its reply, in reality, the legislative history is not supportive on the issue of nonenforcement of a forum-selection clause. Rather, the California Legislature began by observing the general principle that in California, "private contracts that violate public policy are unenforceable." S.B. 707, Ch. 870, § 1(a), 2019-20 Reg. Sess. (Cal. 2019), citing Cal. Civ. Code § 3513, 1668. Later, Subsection (c) states: "A company's failure to pay the fees of an arbitration service provider in accordance with its obligations contained within an arbitration agreement or through application of state or federal law or the rules of the arbitration provider hinders the efficient resolution of disputes and contravenes public policy." Id. at §1(c). In other words, it appears that the Legislature was concerned about companies—subject to arbitration agreements—engaging in nonpayment of arbitration fees and observing that *this practice* contravened public policy. This legislative history does not otherwise contain an anti-waiver provision or discussion against the

enforcement of forum selection clauses. Thus, Plaintiff's lead case in support to of her position, <u>Gemini Technologies, Inc. v. Smith & Wesson Corp.</u>, is distinguishable because the relevant statute included express langue regarding public policy of the relevant state; it is therefore not persuasive. 931 F.3d 911, 916 (9th Cir. 2019), citing Idaho Code §29-110(1).

Because Plaintiff has failed to identify a statute or judicial decision[1] that clearly states a strong public policy so as to render the forum-selection clause unenforceable, the Court finds that the forum selection clause in both the previous agreement and the current agreement to be enforceable.

The Court therefore turns to whether transfer is warranted for the convenience of the parties and witnesses and in the interest of justice.

C.   Private Interest Factors

As dictated to by the Supreme Court of the United States, the Court finds that the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive as weighing "entirely in favor of the preselected forum." <u>Yei A. Sun</u>, 901 F.3d at 1087-88, quoting <u>Atl. Marine</u>, 571 U.S. at 64, 62 n.6. Plaintiff's choice of forum in this District merits no weight. <u>See</u> <u>id.</u>

D.   Public Interest Factors

The Court finds that the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law do not outweigh the forum selection clause or

---

[1] Plaintiff filed a notice of supplemental authority, directing the Court to the California Supreme Court's recent decision <u>Hohenshelt v. Superior Court of Los Angeles County</u>, 18 Cal. 5th 310, 573 P.3d 944 (Cal. 2025). The question before the Court in <u>Hohenshelt</u> was whether the Federal Arbitration Act ("FAA") preempted the CAA based on the CAA's general 30-day arbitration fee payment requirement for the drafting party of the arbitration clause. <u>Id.</u> at 573 P.3d 949. While observing the potential tension between the FAA and CAA, the Court harmonized the CAA's 30-day payment requirement with the FAA by observing that "the [CAA] does not abrogate the longstanding principle, established by statute and common law, that one party's nonperformance of an obligation automatically extinguishes the other party's contractual duties only when nonperformance is willful, grossly negligent, or fraudulent." <u>Id.</u> <u>Hohenshelt</u> does not otherwise discuss the CAA in the context of a forum-selection clause or hold that strong public policy would prevent enforcement of such a clause. Thus, <u>Hohenshelt</u> is not persuasive.

1  private interest factors.  Significantly, Plaintiff has not addressed these factors in her opposition.

2          E.        <u>Whether the Forum-Selection Clause Mandates Transfer to the Plaintiff's Claims</u>

Notwithstanding the forgoing, Plaintiff asserts that the previous agreement's forum selection clause—the previous agreement seemingly being the agreement Plaintiff concedes would control—stated that: "subject to Section 11," the arbitration provision, which mandated arbitration for "all disputes and claims," except for "claims of infringement or other misuse of intellectual property rights" and "claims arising from any alleged unauthorized use, piracy, or theft."  (ECF No. 7, p. 8, citing ECF No. 6-1, p. 36.)  Plaintiff continues with the following argument:

> That forum clause was never intended to govern claims which fell under the compulsory arbitration umbrella, as [Defendant] itself relied upon the SSA's arbitration provision and the FAA in seeking to compel the instant antitrust claims to arbitration—and prevailed on that position in federal court.  Where, as here, all preconditions were met, arbitrations commenced, and Plaintiff now seeks remedies available under the CAA following [Defendant's] fee default, the forum selection clause of the SSA simply does not apply.  Allowing [Defendant] to now invoke that language—having knowingly induced arbitration and then defaulted on payment—would reward procedural 'gotcha' tactics directly at odds with California policy and controlling precedent.

(<u>Id.</u>)

Recall, however, that the previous agreement's forum-selection clause expressly states: "you and [Defendant] agree that any claim asserted in any legal proceeding shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.  You and [Defendant] hereby consent to the exclusive jurisdiction of such courts."  (ECF No. 6-1, p. 36.)  Plaintiff commenced a *legal suit* in the California state courts, which was removed to this District.  Thus, by its plain terms, the forum-selection clause, *not the arbitration clause*, clearly dictates that Plaintiff's claim in this legal proceeding be maintained in King County, Washington, within the Western District of Washington.

In addition, if the current agreement were to apply, it states that "all disputes and claims between you and [Defendant] (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal

court located in King County, Washington, having subject matter jurisdiction." (ECF No. 6-1, p. 11.)  Again, by its plain terms, this clause requires transfer.  Plaintiff brought a dispute (a CAA claim) in the California state courts, which should have been commenced and maintained in King County, Washington.

### F. Plaintiff's Remaining Arguments

Rather than addressing arguments that would engage with the legal standard for transfer in a case involving a forum-selection clause, Plaintiff makes a host of seemingly relevant arguments that are, in reality, peripheral and therefore unpersuasive.

For example, Plaintiff argues that she never consented to the current agreement. (ECF No. 7, pp. 6-7.)  However, as Defendant argues (and the Court agrees), both the previous agreement and current agreement contain an enforceable forum-selection clause that mandate transfer of Plaintiff's legal proceeding and/or claim.  Thus, the Court need not make a substantive determination at this time, on a motion to transfer, of whether Plaintiff actually consented to the current agreement.

Plaintiff also argues that transfer would somehow "deprive [Plaintiff] and the class she seeks to represent of the remedies afforded by the statute" because "[t]ransfer of this matter to Washington would necessarily be followed by the application of Washington law to the exclusion of the CAA." (Id. at p. 5.)  Significantly, and again pointed out by Defendant, whether the CAA applies in this action is a legal question that any court—whether in California or Washington—will have to decide; it does not affect the *transfer* analysis. (ECF No. 11, p. 5.)  Plaintiff argues that a Washington court would apply Washington law "to the exclusion of the CAA" because the parties' agreement has a choice of law provision requiring application of Washington law "excluding conflict of law provisions."  But that choice of law provision would be equally enforceable in this Court if transfer were not granted.  In other words, if the choice of law provision would foreclose application of the CAA in Washington, it would likewise foreclose application of the CAA in this Court.  Again, the Court agrees with Defendant that the Court need decide the any choice of law questions to dispose of this motion.

Moreover, Plaintiff's seeming contention, again in a footnote, that a court could never

transfer to a jurisdiction that does not have the same statutory rights is of no moment. See e.g., Richards v. Lloyd's of London, 135 F.3d 1289, 1294-96 (9th Cir. 1998) (affirming dismissal on forum non conveniens of federal and state securities law claims, including RICO, from Southern District of California because of a forum-selection clause designating English courts—notwithstanding the antiwaiver provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934). Plaintiff's only precedent for this proposition comes for a California Court of Appeal applying California's separate standard for the enforcement of a forum-selection clause. See Verdugo v. Alliantgroup, L.P., 237 Cal. App. 4th 141, 187 Cal. Rptr. 3d 613 (Cal. Ct. App. 2015).

Related to the above, the Court observes that many of Plaintiff's precedents on the issues of transfer and forum-selection clauses are from the California courts. However, it is well-settled that federal law governs the validity of a forum selection clause in diversity cases. See Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988). Indeed, the Supreme Court has explained that "28 U.S.C. § 1404(a), governs a district court's decision whether to give effect to the parties' forum-selection clause . . . ." Stewart Organization, Inc. v. Ricoh, Corp., 487 U.S. 22, 32 (1988). Plaintiff did not address this, and thus, much of Plaintiff's caselaw was unhelpful.

In sum, the Court finds that in light of the enforceable selection clause, and private and public interest factors, this case should be transferred to the Western District of Washington. This conclusion is only further supported by the fact that there is a related case with a related motion, from Plaintiff's counsel here, seeking the same relief sought here that is already pending in that Court.

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant Valve Corporation's motion to transfer (ECF No. 6) be GRANTED; and

2. This matter be TRANSFERRED to the United States District Court for the Western District of Washington.

1    These findings and recommendations are submitted to the district judge assigned to this
action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen
(14) days** of service of this recommendation, any party may file written objections to these
findings and recommendations with the court and serve a copy on all parties.  Such a document
should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The
district judge will review the magistrate judge's findings and recommendations pursuant to 28
U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified
time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th
Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **October 15, 2025**

STANLEY A. BOONE
United States Magistrate Judge